Filed 9/16/16  P. v. Lam CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>GILBERT LAM,<br><br>        Defendant and Appellant. | A144084<br><br>(San Francisco County<br>Super. Ct. No. SCN221188) |

Gilbert Lam appeals the imposition of a $3000 victim restitution award imposed against him under Penal Code section 1202.4,[1] following his conviction for possession of child pornography.  We affirm.

### BACKGROUND

On December 18, 2014, a jury convicted Lam of possessing child pornography, in violation of Penal Code section 311.11(a).  The conviction was based on evidence of 49 video files depicting child pornography found on several hard drives that had been seized during a police raid on his home.  Lam's defense, rejected by the jury, was that he had downloaded the material unintentionally, while batch downloading adult pornography.

Thereafter, Lam was sentenced to 16 months in state prison and, among other things, ordered to pay $3,000 in victim restitution to "Vicky," whom the prosecution identified post-trial as one of the children depicted in the pornography.

---

[1] All statutory references are to the Penal Code.

The prosecution had been contacted by Vicky's attorney, who was requesting restitution on her behalf after learning through a notification from the National Center for Missing Exploited Children and the USDOJ's Child Exploitation and Obscenity Section that the video series exploiting Vicky as a child had been found in the defendant's collection. The prosecution attached to its pleading requesting restitution a copy of the request from Vicky's attorney along with its voluminous supporting documentation. That documentation described the trauma Vicky has suffered as a result of the video of her being sexually abused as a child having been widely disseminated on the internet, and the projected financial toll it would take on her over her lifetime. It included victim impact statements from Vicky and her parents, a forensic psychological evaluation, a vocational assessment and a forensic economic analysis of lost wages. The economic losses detailed in those papers exceeded a million dollars. The prosecution requested Lam be ordered, through restitution, to contribute $5,000 toward her losses.

At the sentencing hearing, defense counsel initially questioned whether there was a legal basis to award restitution to Vicky, since much of the law in this area to date has developed under federal law, but ultimately conceded that there was a basis (italics added):

"THE COURT: . . . What is your position as to the restitution request?

"[DEFENSE COUNSEL]: Your honor, I am a bit confused by it. I looked at the statutes and the cases involved. I didn't see any analogous state law statutes that would make restitution in this type of case available to Vickie. It seemed that the controlling authority related to the federal statutes and there was some federal law on that. And then I also noticed in the probation report that Ms. Duenas, the probation officer, I don't know if she had a similar read on it but there was a question as to restitution in that manner. So, with that, I object. I'm not even sure it's appropriate in this type of case under state law and I've not seen it before. [¶] . . . [¶] . . . .

"THE COURT: Okay. So, Mr. King, putting aside the question of whether [*Paroline v. U.S.* (2014) __U.S.__ [134 S.Ct. 1710] (*Paroline*)] applies directly here, do you dispute that Vickie is an identified victim in this case?

2

"[DEFENSE COUNSEL]:  I dispute that she is an identified victim in this case.  *I would certainly submit that she is a victim of the underlying video that was created but I don't think there's a link to the mere possession of that video that revictimizes her* in this particular case.  I don't see that connection and I'm not aware of any authority that would support that connection.

"THE COURT:  Well, didn't the Supreme Court say that in *New York v. Ferber*, which was cited in *Paroline*, that the possession of child pornography, the circulation of it exacerbates the harm suffered by the victim?

"[DEFENSE COUNSEL]:  *And I do agree with the Court's point there.*  Again, I am looking for something that would make this applicable in the state courts, Your Honor.

"THE COURT:  You mean the specific statute saying that restitution shall be made by someone who's convicted of possession of child pornography as opposed to manufacture?

"[DEFENSE COUNSEL]:  Yes.

"THE COURT:  Okay.  I don't think that there is any such statute but I think that the authority derives from the general principle of making victims whole.  [¶]  I do think that the person depicted in a child pornography video is a victim, not only of the abuse imposed by the person who created the video but I do think there's an additional victimization by the circulation of that video as explained by the Supreme Court in *Ferber* and then quoted again in *Paroline* . . . ."

This timely appeal followed.

## DISCUSSION

Victim restitution is governed by Penal Code section 1202.4, which effectuates "the broad constitutional mandate of California Constitution article I, section 28, subdivision (b), that restitution must [be] imposed 'in every case . . . in which a crime victim suffers a loss . . . .' " (*People v. Giordano* (2007) 42 Cal.4th 644, 655.)  Absent a finding of "extraordinary" circumstances, that statute mandates an award of restitution for economic losses.  (See *id*. at pp. 651–652, 656.)  It provides, "a victim of crime who

3

incurs an economic loss as a result of the commission of a crime *shall* receive restitution directly from a defendant convicted of that crime." (§ 1202.4, subd. (a)(1), italics added.) Subject to exceptions not pertinent here, the statute does not authorize restitution for noneconomic loss. (*Giordano*, at p. 656.) As both parties acknowledge, the trial court's restitution order is reviewed for abuse of discretion. (*Id*. at p. 663.)

Lam challenges the restitution award, first, on the ground there is no evidence "Vicky" was a person depicted in the videos found in his possession. There is substantial evidence it was her, though. The written request from Vicky's lawyer, to which no objection was interposed, states "I understand that Mr. Lam was an avid consumer of child pornography images, including those of Vicky. The continued consumption of the Vicky images, as was done by Mr. Lam, and others, has perpetuated their circulation and the continued, illegal and pathological interest in them." (See *People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048 [statements in probation report to which no objection was made constitute substantial evidence supporting restitution award].) Furthermore, as reflected in the comments during the sentencing hearing quoted *ante*, defense counsel *conceded* it was Vicky ("I would certainly submit that she is a victim of the underlying video that was created . . ."). So any error was invited by defense counsel's own conduct. (See *People v. Whitt* (1990) 51 Cal.3d 620, 640.)

Lam also argues there is no substantial evidence he was the proximate cause of any economic loss suffered by Vicky. In particular, he maintains "there was no nexus between appellant's conduct of possession of child pornography and any resulting economic harm suffered by Vicky. Although Vicky suffered mental distress at the thought of unknown people viewing her abuse and deriving pleasure from her suffering, there was no direct connection between appellant's possession and that suffering." Here, again, Lam overlooks abundance evidence of Vicky's economic losses detailed in the restitution package provided to the trial court to which no objection was interposed (see *People v. Keichler*, *supra*, 129 Cal.App.4th at p. 1048), *and* defense counsel's concession at the sentencing hearing that the mere circulation and possession of child pornography is injurious to a child victim ("And I do agree with the Court's point there"). This point has

4

been thoroughly examined under federal law by the United States Supreme Court, but Lam simply ignores it.

In *Paroline v. United States*, *supra*, 134 S.Ct. 1710, the United States Supreme Court addressed the appropriate standard for awarding restitution in child pornography possession cases under federal law and said, among other things, this: "[T]here can be no question that it would produce anomalous results to say that no restitution is appropriate in these circumstances. It is common ground that the victim suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured. Harms of this sort are a major reason why child pornography is outlawed. [Citation.] The unlawful conduct of everyone who reproduces, distributes, *or possesses the images of the victim's abuse* . . . plays a part in sustaining and aggravating this tragedy." (*Paroline*, at pp. 1726–1727, italics added, citing *New York v. Ferber* (1982) 458 U.S. 747, 759.)

The court adopted the following standard of proximate cause to be applied in such cases, tailored to the unique problems of causation inherent to this class of victims in a digital age: "In this special context, where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying [federal law] should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses. The amount would not be severe in a case like this, given the nature of the causal connection between the conduct of a possessor like [defendant] and the entirety of the victim's general losses from the trade in her images, which are the product of the acts of thousands of offenders. *It would not, however, be a token or nominal amount. The required restitution would be a reasonable and circumscribed award imposed in recognition of the indisputable role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role.*

This would serve the twin goals of helping the victim achieve eventual restitution for all her child-pornography losses and impressing upon offenders the fact that child-pornography crimes, even simple possession, affect real victims." (*Paroline*, *supra*, 134 S.Ct. at p. 1727, italics added.) The court added, "[t]his cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment," and it enumerated a number of factors courts "might" apply, which it said were non-exclusive, non-mandatory and should not be "converted into a rigid formula."[2] (*Id*. at p. 1728.)

Lam does not address *Paroline*. That decision by our highest court puts to rest any doubt that Lam's conduct—possessing child pornography—*was* a proximate cause of Vicky's economic losses and a source of her continuing injuries, which are horrendous. We agree with the Supreme Court's proximate cause analysis in that case which is equally pertinent to application of section 1202.4. Here, the trial court properly exercised its discretion in directing Lam to make restitution to Vicky in the amount of $3,000 of her total losses, which are considerable, which award is lower even than what the prosecution requested. The Supreme Court's words in *Paroline* bear repeating: "child pornography crimes, even simple possession, affect real victims." (*Paroline*, *supra*, 134 S.Ct. at p. 1728.)

## DISPOSITION

The victim restitution award is affirmed.

---

[2] Since Lam does not dispute the amount of restitution ordered, but only its factual basis, it is unnecessary to consider or evaluate any specific *Paroline* factors.

6

_____
STEWART, J.

We concur.

_____
KLINE, P.J.

_____
MILLER, J.